UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELYAA HAMMAD, an individual, | Case No. |
| Plaintiff, | |
| v. | COMPLAINT FOR DAMAGES AND JURY DEMAND |
| LOGISTICS MANAGEMENT INSTITUTE, a Viginia Company, | |
| Defendant. | |

Plaintiff Elyaa Hammad ("Hammad" or "Plaintiff"), by and through her undersigned attorneys of record, Gregory M. Skidmore and Kaitlyn M. Gould of Skidmore | Fomina, PLLC, alleges as follows:

I. **PARTIES**

1.1 Plaintiff is a citizen of the United States and an individual residing in King County, Washington.

1.2 Plaintiff is a former employee of Logistics Management Institute ("Defendant" or "LMI").

1.3 Defendant LMI is and was, at all times material hereto, a company registered, and licensed to conduct business in the State of Washington with its principal place of business in McLean, VA.

COMPLAINT FOR DAMAGES - 1

1.4 On information and belief, Defendant LMI is a citizen of the United States who was an employer as defined in RCW 49.60.040(11).

## II. JURISDICTION AND VENUE

2.1 This Court has jurisdiction over the parties and this matter as all parties are believed to have resided and/or transacted business in Snohomish County, Washington.

2.2 This Court has jurisdiction over the subject matter of this lawsuit action pursuant 28 USC § 1331.

2.3 Venue is appropriate because Defendant transacts business through the selling and providing of services to customers in King County, Washington, which is in the district of this Court.

## III. ADMINISTRATIVE EXHAUSTION

3.1 Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Logistics Management Institute (551-2024-03345) for discrimination under the Title VII of the Civil Rights Act of 1964 ("Title VII"), and the EEOC issued a right to sue letter on March 18, 2024.

## IV. FACTUAL ALLEGATIONS

4.1 Defendant hired Ms. Hammad in February 2018 as a Tableau Developer.

4.2 By October 2023, Ms. Hammad was working as a Senior Consultant for the Company.

4.3 In or about June 2021, Ms. Hammad wrote an article for "Blueprint," the Company's corporate newspaper, detailing how her family had to flee their home in Palestine during the Nakba and escape to Jordan.

4.4 The article received great feedback from Ravi Mistry, Keith Rodgers, Dima Calnon, Akoss Schuppius and multiple other LMI employees and was eventually published.

COMPLAINT FOR DAMAGES - 2

4.5  Despite being approved and published, shortly after publishing, Ms. Hammad received a call from HR stating the article was taken down due to being "antisemitic." Ms. Hammad made no antisemitic comments in this article, and was simply relaying her religious, national, and ethnic history.

4.6  Ms. Hammad was overseas receiving IVF treatment at the time and was unable to respond due to fears of retaliation and the stress impacting her IVF treatments.

4.7  On or about October 9, 2023, CEO Doug Wagoner released a statement via email to all employees showing voracious support of Israel in light of the October 7, 2023, attacks.

4.8  Mr. Wagoner compared these attacks to those on September 11, 2001 ("9/11") and stated the Company would specifically be donating to charities that supported the victims of the attacks.

4.9  As the conflict continued and the death toll in Gaza increased, on or about October 18, 2023, Ms. Hammad reached out to Mr. Wagoner via email and copied LMI's Equity and Inclusion Department ("EAI").

4.10  Ms. Hammad stated that she "deeply appreciate[d]" Mr. Wagoner's commitment to addressing violence in all its forms with his email, but that the Company's failure to provide a "balanced and inclusive approach in acknowledging injustices, violence, and war crimes irrespective of the parties involved" left many Muslim and Palestinian employees feeling excluded especially as the death toll in Gaza continued to rise.

4.11  Ms. Hammad kindly asked that Mr. Wagoner send a similar, equitable email expressing empathy for those affected in Gaza stating the Company's hope for a peaceful resolution to the current situation in the Middle East between both Israelis and Palestinians.

4.12  Ms. Hammad never received a response to her email.  Instead, the Company published a minor article in their "Blueprint" newspaper that vaguely touched on what the Company called "West Asia."

4.13  Ms. Hammad reached out again once more, this time to her manager and Vice President Keith Rodgers explaining how the Company had failed to provide a response to her email, and highlighting the misconceptions in the Company's Blueprint that identified the Middle East as "West Asia."

4.14  Ms. Hammad detailed the distress she was experiencing, and how the Company's lack of equitable support left her feeling unsafe and isolated.  As a result of her distress, Ms. Hammad requested a two-week leave of absence.

4.15  Ms. Hammad explained to Mr. Rodgers that she felt she was being discriminated against by the Company for being Muslim and Palestinian.

4.16  On November 2, 2023, LMI's Legal Counsel, Andrew Sakallaris, followed up with Ms. Hammad via email inquiring about her discrimination claims.

4.17  Mr. Sakallaris stated that he reviewed Ms. Hammad's email correspondence to Mr. Wagoner as well as her complaints to her manager, Mr. Rodgers.  Then, Mr. Sakallaris asked Ms. Hammad to provide a response to his requests for information by November 8, 2023.

4.18  Ms. Hammad, concerned about her position at the Company, reached out to receive legal assistance from the Council on American-Islamic Relations ("CAIR").

4.19  On or about Monday, November 6, 2023, Ms. Hammad and Mr. Rodgers held a phone conference.  Ms. Hammad explained that she wanted to take care of her health then return to work after two (2) weeks.  Mr. Rodgers then stated that Human Resources and the Company would not provide an equitable response to the CEO's earlier email.

COMPLAINT FOR DAMAGES - 4

Skidmore | Fomina, PLLC
14205 SE 36th Street, Suite 100
Bellevue, WA  98006
Telephone: (425) 519-3656

4.20  Mr. Rodgers then asked Ms. Hammad if she would resign.  Ms. Hammad, shocked, said "no" – indicating she would not resign.

4.21  Mr. Rodgers then falsely followed up with an email claiming that Ms. Hammad had resigned.  Ms. Hammad responded to the email that same day, reminding Mr. Rodgers that she did not resign and that she was disappointed with the Company's handling of her discrimination claims.

4.22  On or about November 8, 2023, Alex Baron, senior staff attorney at "CAIR" reached out to Mr. Sakallaris explaining that Ms. Hammad had (1) not resigned and (2) believed she was being discriminated against by the Company.

4.23  Mr. Sakallaris attempted to argue that the Company's brief and half-hearted article in support of those in "West Asia" was equitable to the mass email to all employees by CEO Mr. Wagner showing voracious support of Israel.

4.24  Mr. Sakallaris further claimed that Ms. Hammad resigned, despite Ms. Hammad's multiple messages and conversations to her supervisor and Defendant stating she did not resign from her position.

4.25  At no point did Defendant attempt to work with Ms. Hammad on a solution to her claims of discrimination and find an equitable response regarding the situation in the Middle East and instead terminated her employment.

### V.  CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Religious Discrimination**
**42 U.S.C § 2000e-2 ; RCW 49.60,** *et seq.*

5.1  Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.2 Plaintiff belongs to a protected class within the meaning of RCW 49.60 and 42 U.S.C § 2000e-2 owing to her religion as a Muslim woman of Palestinian decent.

5.3 Further, the Washington Law Against Discrimination ("WLAD") and Title VII prohibit an employer from discriminating against an individual on the basis of their religion.

5.4 Defendant was aware Plaintiff was a devout Muslim woman.

5.5 Plaintiff was terminated based on her religion, Muslim, and her request for equitable treatment for Muslim employees on the part of LMI.

5.6 Plaintiff's religion was a motivating factor for the adverse employment actions taken against Plaintiff.

5.7 As a result of Defendant's discriminatory adverse action, Plaintiff has suffered significant economic and non-economic damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### National/Ethnic Origin Discrimination
### 42 U.S.C § 2000e-2; RCW 49.60, *et seq*.

5.8 Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.9 Plaintiff belongs to a protected class within the meaning of RCW 49.60 and 42 U.S.C § 2000e-2 owing to her ethnicity as a Palestinian woman whose family fled the country during the "Nakba" of 1948.

5.10 The Washington Law Against Discrimination ("WLAD") and Title VII prohibit an employer from discriminating against an individual based on their national or ethnic origin.

5.11 Defendant was aware of Plaintiff's national/ethnic origins as a Palestinian woman.

5.12 Plaintiff was terminated based on her nationality/ethnicity, Palestinian, and her request for equitable treatment for Palestinian employees on the part of LMI.

COMPLAINT FOR DAMAGES - 6

Skidmore | Fomina, PLLC
14205 SE 36th Street, Suite 100
Bellevue, WA 98006
Telephone: (425) 519-3656

5.13  Plaintiff's ethnicity/nationality was a motivating factor for the adverse employment actions taken against Plaintiff.

5.14  As a result of Defendant's discriminatory adverse action, Plaintiff has suffered significant economic and non-economic damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Retaliation**
**42 U.S.C. § 12203; RCW 49.60.210(1)**

5.15  Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.16  Plaintiff opposed what she reasonably believed to be discrimination on the basis of religion and ethnicity by reporting LMI's lack of equitable representation and support for Muslim and Palestinian employees.

5.17  Plaintiff informed her employer that she was not quitting her job, but was going on leave, and that she wanted the Company to provide an equitable statement in support of Palestinians similar to the statement the Company released on October 7, 2023.

5.18  Plaintiff's complaints were a motivating factor in Defendant's decision to terminate her employment.

5.19  As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Silenced No More Act – Retaliation**
**RCW 49.44.211**

5.20  Plaintiff re-alleges and incorporates herein the preceding paragraphs of this Complaint.

5.21  RCW 49.44.211(3) provides that it is a violation of the law to "discharge or otherwise discriminate or retaliate against an employee for disclosing or discussing conduct that

the employee reasonably believed to be illegal harassment, illegal discrimination, illegal retaliation … or sexual assault, that is recognized as illegal under state, federal, or common law, or that is recognized as against a clear mandate of public policy, occurring in the workplace, at work-related events coordinated by or through the employer, between employees, or between an employer and an employee, whether on or off the employment premises."

5.22    Plaintiff discussed and disclosed conduct that she believed violated her rights.

5.23    Plaintiff's complaints were a motivating factor in Defendant's decision to terminate Plaintiff's employment.

5.24    RCW 49.44.211(7) provides that an employer who violates the SNMA "is liable in a civil cause of action for actual or statutory damages of $10,000, whichever is more."

5.25    As a direct and proximate cause of Defendant's actions, Plaintiff has suffered severe economic and non-economic damages, all in amounts to be proven at trial.

## VI.    JURY DEMAND

6.1    Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury in the above-captioned action on all issues so triable.

## VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment in his favor and for relief as follows:

7.1    Economic damages for back pay, front pay, lost benefits, and medical expenses in an amount to be proven at trial;

7.2    Damages for actual compensatory, consequential, and incidental damages as alleged herein or as proven at trial;

7.3    Damages for loss of enjoyment of life, pain and suffering, mental anguish, emotional distress, and humiliation;

7.4    Compensation for any tax penalty associated with a recovery;

7.5 A minimum of $10,000 in statutory damages or actual damages, whichever is more, pursuant to RCW 49.44.211(7).

7.6 Reasonable attorneys' fees and costs pursuant to RCW 49.60.030(2), RCW 49.44.211, and as otherwise allowed by any other statute or claim alleged herein, along with reasonable expert witness fees and other fees and costs incurred in prosecuting this action in an amount to be proven at trial.

7.7 Pre-judgment interest on all amounts awarded as allowed by law;

7.8 Post judgment interest; and

7.9 Any other relief this Court shall deem just and equitable.

DATED: April 1, 2024.

*/s/ Gregory M. Skidmore*
Gregory M. Skidmore, WSBA #47462
Kaitlyn M. Gould, WSBA #58622
*Attorneys for Plaintiff*